HULL, Appellant, vs. DOHENY and others, Respondents.

*April 15—May 4, 1915.*

*Fraud: Pleading: Sufficiency of complaint: Conspiracy: Vendor and purchaser of land: False representations.*

1. A complaint alleging in substance that defendants, in accordance with a prearranged plan of action for their mutual profit, induced plaintiff to buy 320 acres of land in a distant state at $40 per acre, by false representations that it was worth more and that a third person, whose written offer was shown to plaintiff, stood ready to purchase it at once for $47.50 per acre, when as matter of fact the land was not worth to exceed $7 per acre, the letter was a fiction, and the alleged bidder did not exist,—is *held*, on demurrer, to state a good cause of action.
2. The action in such case is not for conspiracy, but to recover damages for a wrong committed by a number of persons who agreed

to act together to that end, the conspiracy being alleged merely
to connect all the defendants with the overt acts of each indi-
vidual.

3. The representation that there was a prospective purchaser for
the land who had already made a *bona fide* offer of an increased
price was a representation of fact, as distinguished from a
promise or an opinion.

4. A mere expression of opinion as to the value of property will not
constitute fraud, but trick or artifice must not be resorted to in
order to throw the purchaser off his guard or prevent inquiry,
especially where the property is in a distant state.

APPEAL from an order of the circuit court for Rock county:
GEORGE GRIMM, Circuit Judge. *Reversed.*

This is an action to recover damages resulting from an al-
leged successful fraudulent conspiracy by the defendants,
seven in number, by which the plaintiff was induced to pur-
chase 320 acres of land in Kansas, paying $12,800 therefor,
when the same was in fact worth only $2,240. A general
demurrer to the complaint was sustained and the plaintiff ap-
peals.

The complaint alleges in substance that the defendant
*Kapke* on November 22, 1913, owned the land in question,
and that on that date the defendant *Doheny* falsely and with
intent to deceive represented to plaintiff that he (*Doheny*)
could buy the land in question for $40 an acre and might sell
it for $47.50 an acre, at the same time showing the plaintiff
a letter purporting to be from one Cohan of Topeka, Kansas,
offering $47.50 an acre for the land; that the plaintiff be-
lieved said representations, and relying thereon and believing
that he himself could receive the profit of $7.50 per acre
agreed to purchase the land of *Kapke* at $40 per acre, and
made an advance payment of $500 on the purchase price,
agreeing to pay $2,500 December 1st and the balance on or
about January 1, 1914; that when the contract was signed
*Doheny* pretended to wire said Cohan that he had closed the
deal on the $47.50 offer and told the plaintiff that he would
ask Cohan by letter to send $1,000 as the first payment and

the balance about February following; that on December 1, 1913, *Doheny* told the plaintiff that he had received $500 from Cohan and had obtained a certificate of deposit for the amount which he had left with the defendant *Fisher* to give to *Kapke;* that at about the same time *Doheny* told the plaintiff that Cohan had written to him that the defendant *Donnelly* would take the contract off the plaintiff's hands, but later told plaintiff that *Donnelly* informed him not to do anything for the reason that Cohan himself was coming to Janesville in a few days to close up the deal.

The complaint then relates several maneuvers of the defendants to impress the plaintiff with the wonderful value of his purchase, the first being a letter written from Kansas by *Fisher* to *Doheny* just before January 1, 1914, greatly exaggerating the value of the land and suggesting that he and *Doheny* buy it from plaintiff at $50 an acre, which letter *Doheny* showed the plaintiff; another being a representation made by *Doheny* and *Fisher* to plaintiff that one *Krans,* a relative of *Fisher,* wished to buy the land at $50 an acre, by which means plaintiff was induced to consent that *Doheny* return the $500 pretended to be advanced by Cohan and declare the Cohan deal off; another being that *Fisher* on January 5, 1914, paid plaintiff $500 for an option of five days on the land and stated that his relative *Krans* was going to get $70 an acre for the land and would arrive in Janesville in a few days to complete the purchase. The complaint further alleges that plaintiff on January 2, 1914, paid *Kapke* the balance of the purchase price of the land at $40 an acre, less an incumbrance of $2,000, relying on the truth of the representations of *Doheny, Fisher,* and *Krans* that the land was worth more or could be sold for more than $50 per acre, whereas the land was not worth to exceed $7 per acre.

It is further alleged that none of the representations as to the value of the land were true; that Cohan was a myth and his alleged letter manufactured; that neither *Fisher* nor

*Kranz* ever saw the land and *Kranz* was not a relative of *Fisher;* that the oral and written representations aforesaid were all made as the result of and in furtherance of a conspiracy and agreement between the several defendants for the purpose of selling the land to plaintiff at a much greater price than its value and dividing the profits among themselves. Judgment is demanded for the difference between the actual value of the land and the amount paid for it by the plaintiff.

The cause was submitted for the appellant on the brief of *Thos. S. Nolan* and *H. S. Dugan,* and for the respondents on a brief signed by *Jeffris, Mouat, Oestreich & Avery,* attorneys for *Philip Doheny, Jr., R. N. Jacobi,* and *Thomas W. Donnelly;* by *Charles E. Pierce,* attorney for *Frank W. Fisher* and *William L. Kapke;* and by *John L. Fisher,* attorney for *Ernest Krans.*

WINSLOW, C. J.    If this complaint does not tell a plain tale of actionable fraud, it would be hard to find one that does. The gist of it is this: The defendants, acting in accordance with a prearranged plan of action for their mutual profit, induced the plaintiff to buy 320 acres of land in a distant state at $40 per acre, on the false representation that it was worth more than that sum per acre and that a third party, whose written offer was produced, stood ready to purchase it at once at $47.50 an acre; when as matter of fact the land was not worth to exceed $7 per acre, the letter was a fiction, and the alleged bidder did not exist.

It is difficult to imagine a more seductive fraud than this and we are at a loss to understand upon what ground the demurrer was sustained. It is not, as seems to have been thought, an action for conspiracy, but an action to recover damages for a wrong committed by a number of persons who have agreed to act together to accomplish that wrong, all being liable for all acts committed by any one of their number in furtherance of the concerted plan of action. The conspiracy

is alleged simply as a means of connecting all the defendants with the overt acts of each individual. *Martens v. Reilly,* 109 Wis. 464, 84 N. W. 840; *Randall v. Lonstorf,* 126 Wis. 147, 105 N. W. 663; *Gebhardt v. Holmes,* 149 Wis. 428, 135 N. W. 860.

The representation that there was a prospective purchaser for the land who had already made a *bona fide* offer of an increased consideration therefor was clearly a representation of a fact as distinguished from a promise or an opinion, and if false may well constitute actionable fraud. It is well established that a mere expression of opinion as to the value of an article will not constitute fraud, but trick or artifice must not be resorted to in order to throw the purchaser off his guard or prevent inquiry, especially where the property is not near at hand but in a distant state. *Morgan v. Hodge,* 145 Wis. 143, 129 N. W. 1083. The complaint fairly bristles with allegations of such tricks or artifices in the present case.

*By the Court.*—Order reversed, and action remanded with directions to overrule the demurrer to the complaint.