## No. 13,181.

ATTERBURY *v.* NATIONAL UNION FIRE INSURANCE COMPANY.

(31 P. [2d] 489)

Decided March 19, 1934.

Mr. JOHN ELLIOTT HILL, Mr. JOHN R. ADAMS, for plaintiff in error.

Mr. H. BERMAN, Mr. FRED N. HOLLAND, for defendant in error.

*In Department.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

PLAINTIFF in error will be referred to as plaintiff and defendant in error as defendant.

Defendant on February 16, 1930, issued to plaintiff a policy of insurance in the sum of $1,500, on plaintiff's violin, to cover its loss by fire, theft or burglary. On May 7, 1930, plaintiff locked and parked his automobile in the street, in Aitken, Minnesota, about 6 p. m. He spent the night at a hotel and went back to his automobile the next afternoon, and found that the violin, so insured, had been stolen from the automobile.

He brought this suit to recover under the policy. His complaint set up the contract of insurance, alleged the loss, and made a copy of the policy a part of the complaint as Exhibit A.

Defendant answered, and for third defense set forth the following covenant of the policy: "Notwithstanding anything contained herein to the contrary, it is understood and agreed that this insurance does not apply to property in or on automobiles or motorcycles while such automobiles or motorcycles are left unattended, nor shall there be liability hereunder for loss caused by the dishonesty of any attendant or attendants." It then alleged that plaintiff had left the automobile unattended, and supported this allegation by the statement of plaintiff to the effect that he locked the car and left it parked in the street. Plaintiff filed and withdrew a demurrer to the answer, and then filed his original replication, wherein, replying to defendant's third defense, above mentioned, he, in substance admitted the truth of his statement as pleaded in the answer, but alleged in substance: That plaintiff had told defendant's duly authorized agents that he desired a policy insuring a violin regardless of whether the car was attended, and the agents handed plaintiff the policy in question and plaintiff read the same, and thereupon plaintiff objected to that provision on the ground that he would not be protected if he was gone from the car and left the violin in it. Whereupon, the agents informed plaintiff that the clause meant that if the violin was locked in the car the car would be attended, and he need pay no attention to said provision

and that plaintiff in accepting the policy relied on the representations of the agents. To this portion of the reply, a demurrer was sustained, and the reply was amended by alleging that the agents were general agents in that they were issued blank signed policies, with authority to fill them out and change, alter and modify the terms of the policies. A demurrer was sustained to this amended reply to the third defense, defendant's motion for judgment on the pleadings was sustained and judgment entered for defendant. Plaintiff assigns error.

To reverse this judgment, plaintiff advances five points of argument: (1) General agents, as contra-distinguished from soliciting agents, may modify the terms and conditions of a policy of insurance; (2) wherever it is shown that a general agent had been granted authority to modify the conditions of a policy, it is error to sustain a demurrer on the grounds that the contract cannot be modified because the policy provides against modification; (3) where material issues of fact are raised by the pleadings, it is error to grant judgment on the pleadings; (4) judgment on the pleadings should not be granted where a demurrer is entered only as to one of several issues; (5) whether a car is attended or unattended is a question of fact.

To sustain the first point, plaintiff relies on *Capital Livestock Ins. Co. v. Campion,* 71 Colo. 156, 204 Pac. 605, which holds, in effect, that a general agent in that case was empowered to waive conditions of forfeiture in the policy, and knowledge of the agent was knowledge of the insurer. Plaintiff here contends that the agent was a general agent with such powers, and as such, delivered the policy to him, which he read; that he objected to the provisions thereof to the effect that if the violin was taken from the car, while he was away from it, that he could not recover, but was assured by said agent that if the car was locked, that under the meaning of the policy, it would be attended. Plaintiff admits receiving and reading the policy which contained the following re-

striction on the agent's authority: "This policy is made and accepted subject to the foregoing stipulations and conditions and to the conditions printed on the back hereof, which are hereby specially referred to and made a part of this policy, together with such other provisions, agreements and conditions as may be endorsed hereon or added hereto; and no officer, agent or other representative of this Company shall have power to waive or be deemed to have waived any provision or condition of this policy unless such waiver if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the Assured unless so written or attached." This restriction reaches further than an agent, of any class, and includes officers of the company. Plaintiff cannot say that he did not have notice of this limitation on the authority of the agent with whom he was dealing. When he had such notice, and at the same time knew the agent was, by what he said, exceeding the powers conferred in the policy, the defendant is not bound by such statements. It is only where the act of the agent is within the apparent scope of his authority, and the insured is not aware of any limitation thereon, that the insurer is bound. *Connecticut Fire Ins. Co. v. Roberts,* 226 Ky. 534, 11 S. W. (2d) 148.

Section 2528, Compiled Laws of 1921, a public policy statute, makes special provision against the very thing upon which plaintiff bases his claim: "Nor shall an insurance company of any kind or character or agent thereof make any contract of insurance or agreement as to such contract other than as plainly expressed in the policy issued thereon; * * *."

There could be no more explicit words used than was employed by the defendant in its policy, and it provides the only means by which its contractual terms can be altered. If we allowed plaintiff, by parol evidence, to change this policy, then plain words in insurance con-

tracts would have little value, and all would rest upon the disputes to arise after a loss.

Plaintiff's case on this point is further weakened by the fact that he does not claim that the agent actually changed the terms of the policy, but only interpreted the word "unattended" to mean unlocked. The defendant is not bound by the interpretation placed thereon by the agent. If an interpretation of this plain word was necessary, we are at a loss to know what explanatory words could have been used in the interpretation. "Attention," or "attended," denotes animation alone. Locks are not animated, they give no attention, they are just locks. If, by any strained or absurd meaning, it could be said in effect, that a lock on the car was an attendant, then, by the wording of the policy, the honesty or dishonesty of such an attendant could be brought into question. Note the wording of the policy on this point, "* * * while such automobiles or motorcycles are left unattended, nor shall there be liability hereunder for loss caused by the dishonesty of any attendant or attendants." The policy, read by the insured, contained its own warning and if he acted upon a statement or the interpretation of the agent not in accord with the most simple wording of the policy, then he must suffer for his own negligence. This discussion has disposed of the first and second points raised by plaintiff.

By plaintiff's own admissions, the third point is not well taken. The question raised by the reply to the third defense, was one of law, to which reply a demurrer was sustained, leaving plaintiff without a defense or reply to the affirmative defense set up in defendant's answer. There being no further issue of law or fact to be determined, judgment on the pleadings was proper.

Judgment is affirmed.

Mr. Justice Butler, sitting for Mr. Chief Justice Adams, and Mr. Justice Burke concur.